### Colin P. LEACH and Marianthe Leach, Appellants,

v.

### CONOCO, INC., Appellee.

No. 01–94–00661–CV.

Court of Appeals of Texas, Houston (1 Dist.).

Feb. 16, 1995.

Darah S. Headley, Houston, for appellants.

Victoria Phipps, Houston, for appellee.

Before HUTSON–DUNN, WILSON and TAFT, JJ.

## OPINION

HUTSON–DUNN, Justice.

In this employment dispute case, the appellants, Colin P. Leach and Marianthe Leach, appeal the trial court's rendering of a take-nothing summary judgment on their claims of promissory estoppel and fraud against the appellee, Conoco, Inc. In three points of error, the appellants contend that the trial court erred in rendering summary judgment for the following reasons: (1) the Statute of Frauds does not apply to the appellants' claims of promissory estoppel; (2) the Statute of Frauds does not apply to the appellants' claims of fraud; and (3) the trial court erred in rendering summary judgment on Mrs. Leach's causes of action since she was not a Conoco employee. We affirm the judgment of the trial court.

## I. Summary of facts

Colin Leach was employed by Conoco from September 1984 through January 1993. In March of 1991, Conoco offered him a supervisory position with Conoco Norway, Inc., and he accepted the offer. Although both the offer and acceptance were in the form of written letters, neither letter mentioned the duration of Leach's employment with Conoco Norway, Inc. Leach commenced his assignment in Norway in April of 1991. However, on July 16, 1991, Leach was advised that his assignment had been terminated, and he was transferred back to his former position in Houston, Texas. Leach continued to work for Conoco until January of 1993, when he requested a voluntary severance package and retired early.

### A. The Leaches' petition

In their original petition, the Leaches alleged that they were entitled to recover on the theories of promissory estoppel and fraud. Specifically, they made the following factual allegations. Agents of Conoco represented to Mr. Leach that his transfer from Houston to Norway would last for four years and would require relocation of both Mr. Leach and his family. Mr. Leach accepted the transfer because the Leaches wished to increase their earnings and save approximately $320,000 over the four-year assignment for their children's college education fund.

Mr. Leach commenced his assignment in Norway in April of 1991, but Mrs. Leach temporarily retained her job in Houston in order to make necessary preparations for the family's move to Norway. On June 26, 1991, Mr. Leach advised his supervisor, R.J. Myers, that Mrs. Leach was resigning from her job in Houston, and Mr. Leach was returning to the United States to help her prepare for the move to Norway. At this time, Myers knew that Mr. Leach was being transferred back to the United States but did not tell Mr. Leach. Mrs. Leach resigned her employment on June 28, 1991, in order to prepare for the relocation planned for July 29, 1991. On July 16, 1991, less than three months after he began his assignment in Norway, Mr. Leach was transferred back to his former position in Houston.

The Leaches alleged that they incurred detriment in the following ways resulting

from their reliance upon Conoco's representations regarding Mr. Leach's transfer: (1) Mrs. Leach resigned from her former employment as a computer software design engineer and was unable to regain comparable employment in Houston for six months; (2) the Leaches were required to transport one of their automobiles to Norway and back; (3) in May and June of 1991, Mrs. Leach and the children made a three week trip to Norway at the Leaches' own expense so that she could locate suitable employment in her field before the family's move; (4) the Leaches released the nanny who cared for their children in anticipation of the move and placed the children in temporary day care; and (5) the Leaches purchased numerous items that were unnecessary in Houston but recommended before moving to Norway.

The Leaches requested the following in their prayer for damages: (1) actual damages, consisting of lost earnings and savings, salary, and out-of-pocket unreimbursed expenses in an amount not less than $351,000; (2) compensation for emotional distress in an amount not less than $175,000; (3) punitive damages; and (4) costs of court.

### B. Conoco's answer to the Leaches' petition

Conoco generally denied all of the allegations in the Leaches' original petition and asserted numerous affirmative defenses, including the Statute of Frauds.

### C. Conoco's motion for summary judgment

In its motion for summary judgment, Conoco asserted that the Leaches' causes of action for promissory estoppel and fraud were barred by the Statute of Frauds because they were based upon an oral promise that could not be performed within one year. Specifically, Conoco argued that a claim for promissory estoppel is barred by the Statute of Frauds unless, unlike the present case, there is an additional promise to put into writing the oral agreement upon which the plaintiff is suing.

### D. The Leaches' response to Conoco's motion for summary judgment

The Leaches, in their response to Conoco's motion for summary judgment, contended that the Statute of Frauds did not apply to their claims for promissory estoppel because they were not attempting to rely upon a written contract as the basis of their claims against Conoco. Additionally, they argued that the Statute of Frauds did not bar their causes of action for fraud because Mrs. Leach was not an employee relying upon a contract between herself and Conoco as the basis of her claim against Conoco.

### E. The summary judgment evidence

The summary judgment evidence submitted by all parties consisted of documents, affidavits, and excerpts of deposition testimony of Mr. and Mrs. Leach. Considering all of the exhibits together, the summary judgment evidence establishes the following facts: L.C. Arnwine of Conoco wrote Mr. Leach on March 1, 1991, and confirmed Conoco's verbal offer to transfer Mr. Leach to Norway. However, the letter did not mention the duration of Mr. Leach's assignment in Norway. Mr. Leach accepted the assignment in a writing, dated March 12, 1991, which also did not state the assignment's duration.

Meyers stated in an affidavit that he had never said that Mr. Leach would be in Norway for four years, and he was not aware that anyone else had made such a representation. Meyers stated that Conoco's policy was not to offer a specific term of employment.

Mr. and Mrs. Leach testified as to the following in deposition: Mr. Leach admitted that he had nothing in writing stating that his assignment in Norway would last for four years. Although he claimed that Conoco's agents orally promised him a four-year assignment, Mr. Leach testified that they never promised to reduce this to writing. Mr. Leach testified Conoco promised him a four-year assignment after he expressed concerns whether his wife could "maintain her employability" in Norway.

Mr. Leach stated that agents of Conoco decided to transfer him from Norway back to Houston before they notified him of the transfer on July 16, 1991; he referred to documents produced by Conoco in discovery that allegedly indicated his transfer was being discussed before July 16. Mrs. Leach also referred to these documents in her deposition and claimed that they indicated that, as of June 4, 1991, certain Conoco agents knew about the potential of sending Mr. Leach back to Houston. Mrs. Leach quit her job on June 28, 1991, in anticipation of the move to Norway, and she did not return to her former employment upon learning that her husband had been transferred back to Houston. Mr. Leach stated that he told Meyers before leaving for the United States on June 26, 1991, that he was returning to help his wife pack up her office.

Mr. Leach testified that, for the duration of his assignment in Norway, Conoco promised him an increased base salary of $6,655 per month, which after adding an "overseas compensation calculation," totalled at a net salary of $9,267 per month. Further, he testified that this amount was exclusive of income taxes and housing and utility expenses, which had already been deducted by the company before arriving at Mr. Leach's net salary figure. Mr. Leach added that Conoco paid for most of his moving costs and that, upon returning to Houston, he retained the $6,655 per month base salary that he had received as a result of his transfer to Norway. Additionally, Mr Leach admitted that, at the time he was transferred from Norway back to Houston, his family had not yet moved there nor had their house been sold. Finally, Mr. Leach testified that his decision to take an early retirement from Conoco was voluntary.

Mr. Leach stated that the $351,000 in actual damages sought in his original petition were calculated in the following manner: (1) $320,000 represented the amount of savings that the Leaches planned to accumulate if they both lived and worked in Norway for four years; (2) $24,000 represented the resulting damage to Mrs. Leach's "employability"; [1] and (3) $7,000 represented miscellaneous expenses. These expenses included paid vacation time that Mrs. Leach lost by quitting her previous job and earnings that she would have made in her previous employment had she not made a job-hunting trip to Norway in May and June of 1991.

## II. Standard of review for summary judgments

▮▮▮ In a summary judgment proceeding brought by a defendant, the movant must present summary judgment proof establishing, as a matter of law, that there is no genuine issue of material fact on one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Alternatively, a defendant may obtain a summary judgment on the plaintiff's cause of action by moving for summary judgment on an affirmative defense and proving all of the essential elements of its defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). If the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth contradictory evidence that gives rise to a fact issue to avoid summary judgment. *Pinkley v. Gallegos*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied). On appeal, evidence favorable to the nonmovant will be taken as true; every

1. The record of Mr. Leach's deposition testimony does not indicate precisely what Mr. Leach meant when he stated that his wife's employability had been damaged. However, the following testimony implies that Mr. Leach was referring to the loss in pay that his wife sustained after she resigned her initial job in Houston and was forced to find lower paying employment once the transfer to Norway fell through:

A. The major disruption we had was to my wife's employability.

Q. So, the major thing that you say you were not compensated for was your wife's time off work?

A. I would like to correct you on that and say: It's not the time off work. It is her employability. And I would suggest that you depose my wife and ask her exactly what she's doing now, what she was doing, and what the implications are.

reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Montgomery*, 669 S.W.2d at 311.

■ A summary judgment for the defendant that disposes of a plaintiff's entire case is only proper if the defendant can show that the plaintiff could not succeed on any of the theories pleaded. *Wheeler v. Yettie Kersting Memorial Hosp.*, 866 S.W.2d 32, 36 (Tex. App.—Houston [1st Dist.] 1993, no writ). We consider each of the Leaches' causes of action in light of this standard.

## III. Analysis

### A. Promissory estoppel

■ In their first point of error, the Leaches contend that the trial court erred in granting summary judgment for Conoco as against their claims of promissory estoppel. Specifically, they claim that Conoco failed to prove as a matter of law that the Statute of Frauds precluded their action for promissory estoppel.[2]

■ Promissory estoppel is a defensive plea in confession and avoidance. *Collins v. Allied Pharmacy Management, Inc.*, 871 S.W.2d 929, 936 (Tex.App.—Houston [14th Dist.] 1994, no writ). Therefore, where a defendant's motion for summary judgment and its accompanying evidence establishes the applicability of the Statute of Frauds as a matter of law, the movant does not have the burden to negate the plaintiff's claim of promissory estoppel. *"Moore" Burger, Inc., v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972); *Collins*, 871 S.W.2d at 936. Rather, the nonmovant has the burden to raise a fact issue as to its promissory estoppel defense. *Collins*, 871 S.W.2d at 936. When seeking to estop the assertion of an otherwise valid Statute of Frauds defense, the oral promise relied upon must be to sign a written agreement that satisfies the stat-

ute, or there must be substantial reliance upon an oral misrepresentation that the statute has been satisfied. *"Moore" Burger, Inc.*, 492 S.W.2d at 937; *Collins*, 871 S.W.2d at 936.

■ The summary judgment evidence, viewed in a light most favorable to the Leaches, establishes that Conoco orally promised Mr. Leach a four-year assignment in Norway, and Mr. and Mrs. Leach relied upon that promise to their detriment. A promise that cannot be performed within one year from the date of its making falls within the Texas Statute of Frauds. Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1987). Although the record contains written letters of offer and acceptance regarding Mr. Leach's assignment in Norway, neither of these letters indicated the duration of his assignment. To be enforceable under the Statute of Frauds, an agreement must be evidenced by a writing containing all of the essential elements of the agreement so that the contract can be ascertained without resorting to oral testimony. *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex.1978). The letters of offer and acceptance in the present case do not contain any indication of the duration of Mr. Leach's assignment, which is an essential element of his agreement with Conoco. *See Collins*, 871 S.W.2d at 933.

Additionally, the record indicates that Conoco neither promised to reduce its oral agreement with Mr. Leach to writing nor represented to him that the agreement satisfied the Statute of Frauds. Therefore, even upon examining the evidence in a light most favorable to the Leaches, we find that Mr. Leach's oral agreement with Conoco was barred by the Statute of Frauds, and the Leaches have failed to raise a fact issue on their claims for promissory estoppel. *Collins*, 871 S.W.2d at 936.

To support their contention that the trial court erred in granting Conoco's motion for

---

**2.** The elements of promissory estoppel are as follows: (1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial detrimental reliance by the promisee.

*English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Collins v. Allied Pharmacy Mgmnt., Inc.*, 871 S.W.2d 929, 937 (Tex.App.—Houston [14th Dist.] 1994, no writ).

summary judgment, the Leaches rely upon this Court's opinion in *Roberts v. Geosource Drilling Serv., Inc.,* 757 S.W.2d 48 (Tex. App.—Houston [1st Dist.] 1988, no writ). In *Roberts,* the appellant, Bobby Wayne Roberts, signed a written employment contract with the appellee, Geosource Drilling Services, and resigned his former employment in reliance upon this contract. *Id.* at 49. Before Roberts began employment with Geosource pursuant to the contract, a Geosource representative contacted him and told him that he would not be employed by Geosource after all. *Id.* Roberts filed suit against Geosource and sought recovery under a "detrimental reliance" theory, and the trial court rendered summary judgment in favor of Geosource. *Id.* at 50. On appeal, this Court reversed the summary judgment and held the following:

> Storm's undisputed oral promise clearly imposed a duty on Geosource to employ Roberts—but not for a fixed duration— and that duty was breached by Geosource. It is no answer that the parties' written contract was for an employment-at-will, where the employer foreseeably and intentionally induces the prospective employee to materially change his position to his expense and detriment, and then repudiates its obligations before the written contract begins to operate.

*Id.* We find *Roberts* distinguishable from the present case. Unlike *Roberts,* the facts of the present case show that the alleged oral employment agreement between Mr. Leach and Conoco was barred by the Statute of Frauds because it could not be performed within one year. *Cf. Niday v. Niday,* 643 S.W.2d 919, 920 (Tex.1982); *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773, 775–76 (Tex. 1974) (indefinite-term employment contracts are considered performable within one year and therefore do not fall within the Statute of Frauds).

We overrule the Leaches' first point of error.

## B. Fraud

■ In its motion for summary judgment, Conoco also asserted the Statute of Frauds against the Leaches' fraud causes of action. In their second and third points of error, the Leaches contend that their fraud causes of action were not barred by the Statute of Frauds or the "employment at will" rule because they did not arise out of any contractual or employment relationship.

■ In determining whether a fraud cause of action is barred by the Statute of Frauds, we must consider the following: (1) the relationship of the promise to the purpose of the statute, *Webber v. M.W. Kellogg Co.,* 720 S.W.2d 124, 129 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); and (2) the nature of damages sought. *Jim Walter Homes, Inc., v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). When a plaintiff, in his claim asserting fraud, attempts to rely upon an allegedly fraudulent oral promise to enforce his principal employment contract, the Statute of Frauds is a defense to his fraud claim. *Webber,* 720 S.W.2d at 129. The essential inquiry in determining whether a plaintiff is attempting to use a fraud claim to circumvent the Statute of Frauds is to examine the nature of the injury that he alleges. *Reed,* 711 S.W.2d at 618. When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone. *Reed,* 711 S.W.2d at 618; *Collins,* 871 S.W.2d at 936; *Webber,* 720 S.W.2d at 129. In other words, a plaintiff's fraud cause of action is barred by the Statute of Frauds when he seeks to obtain the benefit of the bargain that he would have obtained had the promise been performed. *Collins,* 871 S.W.2d at 936; *Webber,* 720 S.W.2d at 129.

■ In Mr. Leach's fraud cause of action, he sought actual damages equal to the amount of savings that he would have accumulated had he stayed in Norway for four years as allegedly promised by Conoco. Since this constituted the benefit of Mr. Leach's bargain with Conoco, we find that the gist of his cause of action for fraud is the breach of a promise rendered unenforceable by the Statute of Frauds. *See Collins,* 871 S.W.2d at 936. We further note that Mr. Leach was an at-will employee since he did

not allege an enforceable promise with Conoco that limited its right to terminate his employment.[3] An "at will" employee is barred from bringing a cause of action for fraud against his employer based upon the employer's decision to discharge the employee. *See Jones v. Legal Copy, Inc.,* 846 S.W.2d 922, 925 (Tex.App.—Houston [1st Dist.] 1993, no writ) (at-will doctrine effectively bars contract and tort claims based on the decision to discharge an at-will employee); *Molder v. Southwestern Bell Tel. Co.,* 665 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

 The appellants attempt to distinguish Mrs. Leach's fraud cause of action by arguing that it was based upon the duty that Conoco owed her as someone it was going to relocate to Norway rather than a contractual relationship. We disagree. Tort obligations are obligations imposed by law apart and independent from promises made between the parties to a contract. *See Southwestern Bell Tel. Co. v. Delanney,* 809 S.W.2d 493, 494 (Tex.1991). If a defendant's conduct gives rise to liability only because of a breach of contract, the plaintiff's claim ordinarily sounds only in contract. *Id.* In the present case, Mrs. Leach's fraud cause of action is based upon Conoco's alleged oral promise to Mr. Leach that his assignment in Norway would last for four years. Conoco never made any promise to Mrs. Leach, either oral or written, that her husband's job would last four years, nor did it require her to leave her former employment as a condition to Mr. Leach's transfer. Since we have already found that Conoco's oral promise to Mr. Leach was unenforceable pursuant to the Statute of Frauds, we further find that Mrs. Leach's cause of action for fraud is also barred by the statute.

We overrule the Leaches' second and third points of error.

We affirm the judgment of the trial court.

---

**3.** *See Webber,* 720 S.W.2d at 127 (to establish cause of action for wrongful termination, appellant must prove: (1) he and his employer had a contract that specifically provided that the employer did not have the right to terminate the employment contract at will; and (2) that the employment contract was in writing).