

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00452-CV

SEVIER ENTERPRISES, INC.            APPELLANT

V.

THE EUCLID CHEMICAL            APPELLEE
COMPANY

----------

## FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY
## TRIAL COURT NO. CV-2012-03217

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In six issues, Appellant Sevier Enterprises, Inc. appeals the judgment on behalf of Appellee Euclid Chemical Company. We affirm.

---

[1]See Tex. R. App. P. 47.4.

## II. Background

Sevier submitted a proposal to perform waterproof coating of MCM Elegante Hotel's exterior walls after the hotel suffered hurricane damage in 2008. In its proposal, Sevier indicated that it would use Thorolastic waterproof coating, but after Sevier's original proposal, Thorolastic's manufacturer changed its warranty policy and would no longer warrant a "wet-on-wet" application.[2] Euclid told Sevier that it would issue a warranty on its waterproof coating product, Tammolastic, for wet-on-wet application, and Sevier revised its proposal to delete Thorolastic and substitute Tammolastic. The hotel accepted Sevier's proposal. Allegedly, Sevier did not ascertain whether the hotel's exterior walls met Tammolastic's use instructions before it began applying it.

When Sevier finished the job, Euclid issued to the hotel a five-year express warranty that covered "failure of repairs subject to normal and usual exposure . . . . If upon laboratory/petrographic testing, it has been determined that the product was the cause of the repair failure, The Euclid Chemical Company will authorize the appropriate repairs to the distressed areas." When the hotel's exterior walls began to show discoloration a few months later, Sevier reported the problem to Euclid. After testing, Euclid reportedly could not determine that the Tammolastic was the cause of the problem. Sevier sued

---

[2] A "wet-on-wet" application involves application of two coats of the waterproofing product in order to attain a requisite thickness, but the second coat is applied before the first coat has dried.

2

Euclid for breach of warranty, DTPA violations, negligence, negligent misrepresentation, and breach of contract.

Euclid filed a motion for summary judgment on all counts, and the trial court granted the motion on Sevier's negligence and negligent misrepresentation claims based on the economic loss rule. Following the presentation of Sevier's case-in-chief at trial, Euclid moved for a directed verdict on the remaining causes of action, and the court granted the motion "[b]ecause [Sevier] has failed to enter into evidence any cause or any evidence that the cause of the damage reported to the building is attributable to the Defendant and the Defendant's product." This appeal by Sevier followed.

### III. Directed Verdict

The trial court granted a directed verdict on Sevier's causes of action for breach of warranty, breach of warranty under the DTPA, and breach of contract.

### A. Standard of Review

A directed verdict is proper only under limited circumstances: (1) when the evidence is insufficient to raise a material fact issue, or (2) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet. denied). In reviewing a directed verdict, we follow the standards for assessing legal sufficiency of the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We

3

review the evidence in the light most favorable to the person suffering the adverse judgment, and we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827; *see also Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011).

## B. Breach of Warranty

In the first part of its first issue, Sevier asserts that the trial court erred in granting Euclid's motion for directed verdict as to Sevier's cause of action for breach of warranty because Euclid failed to plead and prove the "affirmative defense of no liability under the terms of the warranty." Put another way, Euclid's motion for directed verdict should not have been granted in favor of Euclid absent proof that it had no liability under the warranty. Sevier's position is that once it presented a prima facie case for breach of warranty, Euclid had the burden to "plead and establish facts as to why it is not liable on the warranty," that is, prove the affirmative defense of "no liability." Or, as articulated by Sevier, after Sevier established its prima facie case for breach of warranty, it was incumbent upon Euclid to affirmatively plead and prove that Sevier had breached one of the pre-conditions that would have made Euclid liable on the warranty or that some other condition or event precluded liability. This argument fails.

Sevier fails to favor this court with any authority setting forth the existence of such an affirmative defense nor have we found any. Further, following this argument to its logical conclusion, any time a plaintiff presented prima facie proof

4

of the elements of any cause of action, Sevier would have us hold that the burden then shifts to the defendant to disprove an element of plaintiff's cause of action or assert and prove an affirmative defense. This burden-shifting argument simply has not been and is not the law. It is the plaintiff's burden to prove his case, not the defendant's burden to disprove it. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56, 126 S. Ct. 528, 534 (2005); *Farmers & Merchs. State Bank of Krum v. Ferguson*, 617 S.W.2d 918, 920 (Tex. 1981).

In its second part of its first issue, Sevier argues that it presented evidence of each element of breach of warranty, thereby precluding the trial court from granting a directed verdict. Sevier cites *Godfrey* for the elements of a breach of warranty cause of action. *See Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 726 (Tex. App.—El Paso 2011, no pet.). For whatever reason, the court in *Godfrey* omitted the essential element of causation when it listed the elements. *See Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 587 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.) ("In order to recover for the breach of an express warranty, a plaintiff must prove . . . that such failure was the proximate cause of plaintiff's injury."). Elsewhere in the *Godfrey* opinion, however, our sister court makes it clear that causation is in fact one of the elements: "Finally, with respect to their breach of warranty claims . . . [t]here is no evidence . . . that the alleged breach cause[d] injury to Appellant. As a result, Appellant's claim for breach of warranty fails as well." *See Godfrey*, 356 S.W.3d at 727. Therefore, it

was incumbent on Sevier to introduce evidence of breach-of-warranty causation to avoid a directed verdict.

During oral argument before this court, Sevier argued that there was circumstantial evidence of causation: Euclid replacing the Tammoplastic with Tamocore, Euclid paying for that replacement, and Euclid testing the Tammoplastic in its own lab rather than using an outside lab. We hold this "evidence" does not address whether Tammoplastic caused the discoloration in question and does not meet the legal sufficiency test for causation. This is important because it is not disputed that Sevier presented no direct testimony as to causation, that is, that the alleged failure of the warranted product, Tammolastic, caused the damage in question. Further, the record affirmatively represents that no such evidence existed. In response to his counsel's question during Sevier's case-in-chief, "[Y]ou don't have any testimony to offer whatsoever with respect to what caused the problem, would you agree?" Lonnie Sevier, the sole witness, testified, "[t]hat's correct."

Mr. Sevier had no expert testing performed on the structure because he did not feel like Sevier was the one that should be doing that. Counsel for Sevier also told the court at trial that "we don't know what the problem is as of today." When asked by the court what evidence had been adduced by Sevier as to causation, counsel also responded that he could not identify any such evidence but rather that "all of the evidence that we have provided is that [Sevier] is not the

6

producing cause." Finally, the following exchange subsequently occurred between the court and counsel for Sevier.

> The Court: And, Mr. Ramirez, you—again, I am going to ask you for at least three of the remaining causes of action. Is there something in the record that you can point to that suggests that the Defendant's product is the cause of the damage?

> Mr. Ramirez: Your Honor, the Defendant's product—truthfully, I cannot tell you that we have provided any evidence that would support the claim that the product is the cause. I would have to be— I would have to be frank in that regard, Your Honor.

> . . . .

> The evidence may be there. We have not provided that.

Therefore, because no alleged "no liability" affirmative defense exists and because Sevier produced no evidence of causation on its breach of warranty claim, Sevier's first issue is overruled.

## C. Lack of Causation

In Sevier's second, third, and fourth issues, it argues that the trial court erred in granting a directed verdict as to its DTPA breach of warranty, DTPA misrepresentation, and breach of contract claims. However, each of these causes of action, based on the alleged failure of the Tammoplastic product, also has causation as an element. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (stating that under a DTPA misrepresentation claim, "[the alleged] . . . acts constituted a producing cause of the consumer's damages"); *Pagosa Oil & Gas, LLC v. Marrs & Smith P'ship*, 323 S.W.3d 203, 215 (Tex. App.—El Paso 2010, pet. denied) (noting that the last element of a

7

breach of contract claim, the plaintiff incurred damages as a result of the defendant's breach, includes a causation requirement); *Elliot v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (stating that "to recover under the DTPA on a breach of warranty, a plaintiff must show . . . the breach was a producing cause of damages"). Because, as previously discussed, no evidence was adduced as to causation, a directed verdict on these issues was proper. Thus, Sevier's second, third, and fourth issues are overruled.

## IV. Denial of Continuance

We next turn to Sevier's fifth issue, which asserts that the trial court erred in failing to grant a continuance of the summary judgment hearing and trial to allow Sevier more time for discovery.

### A. Procedural Background

Sevier initiated this lawsuit on February 27, 2012, in Dallas County. The case was transferred to Denton County on December 10, 2012. Sevier served Euclid with discovery requests on February 22, February 28, May 21, and July 1, 2013. May 21, 2013, was the date for designation of Sevier's experts and production of their reports. On August 22, 2013, Euclid filed a motion for summary judgment, eight days following Sevier's receipt of Euclid's responses to its discovery request. On September 9, 2013, Sevier filed a motion to compel and a request for continuance for further discovery from the hearing set for September 24, 2013, on Euclid's motion for summary judgment. No order

8

appears in the record on the motion for continuance, but after further petitions and motions were filed, the trial court partially granted Euclid's motion for summary judgment, and the remaining claims were tried on October 22, 2013. As such, we conclude that the trial court impliedly denied the motion for continuance. *See D.R. Horton–Texas, Ltd. v. Savannah Props. Assoc., L.P.*, 416 S.W.3d 217, 223 & n.4 (Tex. App.—Fort Worth 2013, no pet.).

## B. Standard of Review

We review the denial of a motion for continuance for an abuse of discretion. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low,* 221 S.W.3d at 620. A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). But an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

9

In our review of the denial of a continuance under the abuse of discretion standard, we consider the following factors: (1) the length of time the case has been on file, (2) the materiality and purpose of the discovery sought, and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *D.R. Horton–Texas, Ltd.*, 416 S.W.3d at 223.

### 1. Length of Time

The length of time between the commencement of the case and the filing of the motion for continuance was about nineteen months. The reason for the continuance motion was the request by Sevier's expert for more information to "fully analyze the problem," stemming from responses to discovery initiated by Sevier on July 1, 2013, over sixteen months following the filing of the suit. It is also worth noting that Sevier's expert's designation stated that the expert "had not yet been officially retained . . . but [was] being designated in the abundance of caution," and this expert did not provide a report as required by the court's May 21, 2013 order.

Denial of a motion for continuance in cases in which there was a much shorter length of time between the commencement of the case and the filing of the motion have been found to not constitute an abuse of discretion. *See, e.g.*, *Harden v. Merriman*, No. 02-12-00385, 2013 WL 5874708, at *5 (Tex. App.—Fort Worth Oct 31, 2013, no pet.) (concluding "although appellant's lawsuit had been on file for only approximately five months . . . we cannot conclude that the trial

10

court abused its discretion by denying appellant's motion for continuance because the record establishes appellant's lack of diligence"); *Restaurant Teams Intern., Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 342 (Tex. App.—Dallas 2002, no pet.) (holding that the trial court did not abuse its discretion when it found that less than nine months was adequate time for discovery and as such sufficient to deny the motion for continuance). Considering the length of time that had elapsed between the filing of the suit and the request for continuance, we cannot say that the trial court abused its discretion based on this factor.

### 2. The Materiality and Purpose of the Discovery Sought

Sevier argues that its unofficially retained expert needed information regarding tinting products mixed into the coating products in question. However, when this expert's report was produced long after it was due and after Sevier's motion to compel was filed, it contained no opinions regarding tints or the need for information regarding tints. In short, the court had nothing before it from a fact or expert witness that information regarding tints was needed in order to form causation opinions. *Patten v. Johnson*, 429 S.W.3d 767, 776 (Tex. App.—Dallas 2014, no pet. h.) ("There is no abuse of discretion in a case in which the trial court could reasonably conclude additional discovery was unnecessary and irrelevant to the legal issues in the case."). Thus, we cannot say that the trial court abused its discretion in not issuing a continuance based on this factor.

11

### 3. Due Diligence

As partially previously discussed, Sevier missed its expert report deadline and did not file a motion to compel, purportedly to obtain information needed for that report, until well after the report was due. A year and five months elapsed between the filing of the suit and the date the expert's report was due, yet no motion to compel the "needed" information was filed in the interim. It is readily apparent that if the expert's report was due in May 2013, there was a lack of diligence when the discovery seeking the information purportedly necessary for the report was not served until July 1, 2013, and concerning which, Sevier indicated that its expert could not "fully analyze the problem" without that requested information. Therefore, we cannot say that the trial court abused its discretion in denying the continuance based on this final factor.

Sevier's fifth issue is overruled.

## V. Summary Judgment and Directed Verdict

In its sixth issue, Sevier asserts error on the part of the trial court in granting a directed verdict on certain causes of action after having denied a no-evidence motion for summary judgment as to those causes of action. Other than pointing to a case which equates similarities between a no-evidence summary judgment motion and a directed verdict, *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997), Sevier points to no authority that it is error for the trial court to grant a directed verdict in these circumstances. Nor

have we found such cases, and nor do we choose to create such law limiting the discretion of trial judges. Sevier's final issue is overruled.

## VI. Conclusion

Having overruled Sevier's issues, the judgment of the trial court is affirmed.


/s/ Bob McCoy

BOB MCCOY
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DELIVERED:  November 6, 2014

13